***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times herein, an employer-employee relationship existed between the defendant-employer and plaintiff.
3. Liberty Mutual Insurance Company was the workers' compensation carrier on risk at all relevant times herein.
4. Plaintiff sustained a compensable injury by accident while in the course and scope of employment with defendant-employer on August 25, 1998.
5. Plaintiff's average weekly wages were $707.20 per week at all relevant times herein.
6. The issues to be determined in this matter are as follows:
(a) Whether plaintiff has sustained a change of condition;
(b) If so, what, if any, additional benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act; and,
(c) Whether plaintiff is entitled to attorney's fees in this matter.
7. The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 42 years of age at the time of the hearing before the Deputy Commissioner, and had completed high school. Plaintiff had worked for defendant-employer for approximately 25 years as a frame attendant. Her duties included cable assignment and wiring telephones for installers, which required climbing, stooping and bending.
2. On August 25, 1998, plaintiff sustained a compensable back injury when she fell as she was fixing a telephone line that was wired incorrectly. Plaintiff fell backwards hitting her left shoulder, left side of her body, and back. After her injury by accident, plaintiff continued to work.
3. Defendants accepted plaintiff's claim pursuant to a Form 60 on August 25, 1998.
4. Plaintiff was initially treated for her injuries on or about January 6, 1999, at Med Control. Plaintiff was also initially treated by her family doctor, Dr. William Smith, and by Dr. Lucas, an orthopaedic. Thereafter, plaintiff was treated by Dr. Russell H. Amundson.
5. Dr. Amundson initially saw plaintiff on or about July 19, 1999, for treatment of her work-related injury. Plaintiff complained of pain in her left shoulder, neck, the left side of her back, and left leg. Dr. Amundson initially treated plaintiff's condition conservatively. When plaintiff did not respond, Dr. Amundson performed a diskectomy and allograft fusion surgery on September 29, 1999.
6. On December 6, 1999, Dr. Amundson released plaintiff to return to light- to medium-duty work and agreed that plaintiff could perform the job of frame attendant with defendant-employer.
7. Plaintiff continued to complain of pain and Dr. Amundson ordered a myelogram of plaintiff's lumbar spine to be performed on February 14, 2000. Thereafter, Dr. Amundson noted that plaintiff could continue in the same position.
8. Dr. Amundson was of the opinion that plaintiff had reached maximum medical improvement on June 5, 2000, and he indicated that plaintiff retained a 15% permanent partial disability rating of her back as a result of her injury by accident.
9. Thereafter, plaintiff was referred to pain management for her continuing pain and was seen by Dr. Kathleen Barfoot on September 6, 2000, for myofascial syndrome, pes planus, and insomnia. Dr. Barfoot treated plaintiff from September 6, 2000, through August 2001 when plaintiff stopped going to Dr. Barfoot.
10. Thereafter, plaintiff was seen and treated by Dr. J. Ghia in May 2002 for panic attacks and complaints of pain including fibromyalgia.
11. Plaintiff began treating with psychiatrist Michael McClure, M.D., on February 1, 2002. According to Dr. McClure, plaintiff's initial complaints included combined anxiety and neuro-vegetative symptoms of depression, adhedonia (inability to experience pleasure), hopelessness and helplessness, lack of energy and inability to concentrate, panic attacks, paresthesia (tingling) in her hands and arms, cardiac palpitations, chronic pain in her spine and low back that radiates into her arm. Dr. McClure diagnosed plaintiff's condition as a pain disorder with both psychological and general medical factors, panic disorder, and recurrent major depressive disorder. Dr. McClure's treatment of plaintiff focuses on her depression and the psychological component of her chronic pain.
12. Dr. McClure testified at deposition that plaintiff's depression is causally related to her chronic pain, and that the work-related accident on August 25, 1998, is the major precipitant of plaintiff's psychiatric symptoms. Although Dr. McClure did testify that plaintiff has other stressors in her life, he opined that the major cause of her depression is the chronic pain from the work-related accident.
13. Under Dr. McClure's supervision, plaintiff is on a number of medications which include: Zonegram, Keppra, and Ultram for chronic pain management; Vivactil, Lexapro, Wellbutrin XL, and Trazedone for depression; and Klonopin and Ativan for anxiety.
14. Upon plaintiff's second visit with Dr. McClure, the doctor noted that plaintiff had a functioning level of 40-45 out of a possible 100, and opined at deposition that her functioning level had not improved since that time. Dr. McClure stated that plaintiff has made minimal, if any, improvement during the time he has treated her.
15. Though plaintiff had continued to work for defendant-employer when she first began treating with Dr. McClure, it soon became difficult for plaintiff to continue working. Dr. McClure testified that although plaintiff wanted to continue to work because of its importance to her self-image, Dr. McClure had to encourage her to stop working because he believed it was not reasonably safe for her to be attempting to work. Dr. McClure stated that plaintiff's job with defendant employer was very physical and involved physical safety issues. Because of plaintiff's suicidal ideations, he believed that one more work-related stressor or injury would push plaintiff "over the edge." Thus, Dr. McClure advised plaintiff to discontinue working because it was not "safe or appropriate" for plaintiff to be working.
16. As to plaintiff's ability to return to work, or otherwise obtain meaningful employment, Dr. McClure opined that plaintiff is unable to carry out her normal duties with defendant-employer, and further, is incapable of any meaningful employment or any job at present. Dr. McClure stated that plaintiff's level of functioning is so poor that he has often considered recommending that her driver's license be revoked. He further stated that any work that required sitting at rest, standing at rest, moving around, picking up things, or bending over would be difficult for plaintiff because of her chronic pain. Moreover, it is necessary for plaintiff to be on a lot of medication, which causes accompanying cognitive disorganization or slowing with emotional blunting. Thus, Dr. McClure concluded that it would not be "prudent" for plaintiff to be in a work environment at present.
17. As to the likelihood that plaintiff could return to suitable employment, Dr. McClure opined that removing, or otherwise eliminating, plaintiff's chronic pain would ease her depression and panic attacks, thereby enabling plaintiff to regain normal activities and return to work. However, the Full Commission finds that as of the date of Dr. McClure's deposition, plaintiff continued to experience disabling chronic pain and resulting depression and anxiety.
18. At defendants' request, Verne G. Schmickley, PhD, prepared a Summary of Psychological Review based upon plaintiff's medical records. Dr. Schmickley opined that plaintiff's depression and psychological conditions are not causally related to the work-related back injury that plaintiff sustained on August 25, 1998. Dr. Schmickley believed that plaintiff's condition is more likely a consequence of a litany of stressors that are independent of her work-related injury. As to whether plaintiff was capable of returning to work, Dr. Schmickley stated in his report that: "As there is no vocational evaluation or objective job descriptions available, I cannot predict whether [plaintiff] could return to her position as a frame attendant with [defendant-employer]." Further, Dr. Schmickley stated that: "Without unscientific speculation, one cannot objectively determine whether [plaintiff's] depression and other psychological conditions have been exacerbated, accelerated, or aggravated by [her] work injury." Because Dr. Schmickley was not able to address whether plaintiff was capable of employment, or whether her psychological conditions were aggravated by her work-related injury, the Full Commission finds that his report possesses little probative value. Moreover, the Full Commission assigns greater weight to the opinions of Dr. McClure, as opposed to those of Dr. Schmickley, because Dr. McClure is plaintiff's treating psychiatrist, whereas Dr. Schmickley performed merely a cold review of plaintiff's medical records.
19. Plaintiff's treating physicians have opined, and the Full Commission so finds, that plaintiff's psychological problems are a proximate result of her continuing chronic pain as a result of her compensable injury by accident. It should be noted that plaintiff has not complied with all of the treatments that she has been offered, however, there has been no showing that her failure to comply has in any way impacted her ability to work or not.
20. Because plaintiff's psychological conditions and need for treatment are proximately caused by her admittedly compensable injury by accident, plaintiff is entitled to receive medical treatment for her psychological conditions under the North Carolina Workers' Compensation Act; and further, plaintiff is entitled to receive continuing temporary total disability compensation as a result of her psychological problems.
21. The parties have stipulated that plaintiff had an average weekly wage of $707.20 at all relevant times herein, which yields a compensation rate of $471.47 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on August 25, 1998, while in the course and scope of employment with defendant-employer for which plaintiff is entitled to receive benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §97-2(6).
2. Plaintiff is entitled to have defendants pay temporary total disability compensation to plaintiff in the amount of $471.47 per week from August 25, 1998, the date of her work-related injury by accident, through and continuing until further order of the Industrial Commission for the psychological problems that are a proximate result of plaintiff's injury by accident. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants pay for her medical expenses incurred or to be incurred, including treatment for plaintiff's psychological conditions that are a proximate result of her August 25, 1998, injury by accident, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Defendants are entitled to a credit for any wages or compensation previously paid to plaintiff during the period in which plaintiff has been found to be due temporary total disability compensation. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the amount of $471.47 per week from August 25, 1998, through and continuing until further order of the Industrial Commission, subject to a reasonable attorney's fee as provided herein. Because a portion of such compensation has accrued, such portion shall be paid directly to plaintiff in lump sum.
2. Defendants shall pay for plaintiff's medical expenses incurred or to be incurred, including treatment for plaintiff's psychological conditions that are a proximate result of plaintiff's August 25, 1998, injury by accident, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, give relief, or lessen the period of plaintiff's disability.
3. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in paragraph 1 of this award. Because a portion of the compensation upon which such fee is based has accrued, defendants shall pay such portion directly to plaintiff's counsel in a lump sum; and thereafter defendants shall pay to plaintiff's counsel every fourth check.
4. Defendants shall receive a credit for any wages or compensation previously paid to plaintiff during the period in which plaintiff has been found to be due temporary total disability compensation.
5. Defendants shall pay the costs due the Commission.
This 24th day of January 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER